# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SHAUN ROSIERE,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>    Defendant. | Case No. 2:09-cv-01975-JCM-PAL<br><br>**ORDER**<br><br>(Mtn for Order - Dkt. #2)<br>(Mtn for Sanctions- Dkt. #9)<br>(Mtn to Quash - Dkt. #12) |

This is a miscellaneous action filed by Plaintiff Shaun Rosiere ("Rosiere") challenging Defendant United States Securities and Exchange Commission's ("SEC") attempt to obtain access to financial records. Before the court are: (a) Rosiere's Motion for Order Pursuant to Customer Challenge Provision of the Right to Financial Privacy Act of 1978 (Dkt. #2) and the SEC's Response (Dkt. #4) and Affidavit (Dkt. #5); (b) Motion for Sanctions (Dkt. #9) and the SEC's Response (Dkt. #10); and (c) Motion to Quash (Dkt. #12).

## BACKGROUND

The SEC's Verified Points and Authorities (Dkt. #5) and the Verification of Amy Sumner (Dkt. #6), a staff attorney with the SEC's Division of Enforcement, state the reasons the SEC issued the two subpoenas Rosiere challenges in this case. On September 17, 2009, Rosiere pled guilty to federal mail fraud charges for his involvement in several investment schemes involving Net Central Investment Club Consortium ("Net Central") and MAAAC Financial Services, L.L.C. ("MAAAC") and for an unrelated identity theft ring. See U.S. v. Rosiere, Case No. 3:90-cr-00720-GEB (D.N.J.). On September 23, 2009, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in In the Matter of Net Central Investment Club Consortium,

Inc., (D-3091). The Formal Order directed SEC staff to investigate and determine whether federal securities law was violated in connection with the Net Central and MAAAC investment schemes. Specifically, the SEC is investigating whether unregistered securities were offered or sold; whether people or entities acted as a broker, dealer, investment advisor, or investment company without being registered with the SEC; or whether fraud occurred in the offer or sale of securities. The Formal Order authorizes the issuance of subpoenas in connection with the investigation.

During its investigation, the SEC obtained information establishing that Rosiere operated Net Central, a Colorado corporation that is not registered with the SEC, between July 2008 and January 2009. The Response indicates that the SEC believes that Net Central: (1) informed investors that it would pool investors' money, trade their money in foreign currencies using a unique trading strategy, and split profits evenly between Net Central and its investors; (2) raised over one million dollars from its investors; (3) informed investors in January 2009 that its operations moved to Panama, and it has had no contact with investors since that time; and (4) Rosiere began promoting another investment scheme through MAAAC around January 2009.

On September 28, 2009, the SEC issued a subpoena to Wells Fargo pursuant to the Formal Order. The subpoena requests all bank records from Wells Fargo for the following companies: Net Central; Platinum Investment Fund, Inc.("Platinum"); Active Trader News, Inc. ("Active Trader"); Shaun Rosiere Mortgage, Inc. ("Rosiere Mortgage"); Lite Auto-Trader Publishing, Inc. ("Lite") and Seva Group, Inc. ("Seva"). The SEC believes that Rosiere is a signatory on the bank accounts of Platinum, Active Trader, and Rosiere Mortgage. The SEC also believes that Michael Fleisher, who helped solicit investor funds for Net Central, controls the accounts of Seva and Lite. On October 1, 2009, the SEC issued a second subpoena to Wells Fargo, seeking all bank records of Rosiere.

**I.      Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 (Dkt. #2).**

Rosiere seeks an order pursuant to the customer challenge provisions of the Right to Financial Privacy Act of 1978 ("RFPA" or the "Act"), 12 U.S.C. § 3401 et seq., quashing two investigative subpoenas issued by the SEC on September 28 and October 1, 2009. The subpoenas seek the bank records of Rosiere and six different corporations at Wells Fargo Bank, N.A. ("Wells Fargo") in

connection with an SEC investigation. Rosiere argues the SEC lacks authority to investigate the transactions at issue because "investment clubs" do not need to be registered with the SEC. Rosiere also argues that the subpoenas should be quashed because they do not allow a reasonable period for compliance. Lastly, Rosiere asserts the subpoenas should be quashed because they seek privileged corporate resolutions.

In response, the SEC argues that the court should enforce the subpoenas because they comply with the RFPA's notice requirements, and the records sought are relevant to a legitimate law enforcement investigation. Relying on 12 U.S.C. §§ 3401(4) and (5) and 3410, the SEC argues that Rosiere lacks standing to challenge the September 28, 2009 subpoena because it seeks the bank records of corporations, and the RFPA does not allow challenges to subpoenas for bank records of corporations. The SEC contends that Rosiere's challenge to the October 1, 2009 subpoena must also fail because the records sought are relevant to a legitimate law enforcement investigation. The SEC argues it is authorized by Section 20(a) of the Securities Act, 15 U.S.C. 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. 78u(a), to investigate whether violations of federal securities laws have occurred. The SEC concedes that certain investment clubs and people involved with them do not need to register with the SEC; however, it argues that those people and clubs remain subject to the SEC's anti-fraud provisions and investigatory powers. Additionally, the SEC is authorized to investigate whether the investment club properly falls within the SEC's registration exemptions.

The SEC also argues that the subpoenaed documents are relevant to the SEC's investigation. Relevance is broadly defined in the RFPA context. See 12 U.S.C. § 3410(c). Here, the SEC believes there are three reasons Rosiere's bank records are relevant. First, the records will help the SEC determine the extent of Rosiere's involvement in the trading schemes under investigation. Second, they will show whether additional parties were involved in the scheme. Third, they may help trace the proceeds of possibly illegal transactions for disgorgement and other purposes.

The SEC also asserts that Rosiere does not have standing to object to the time frame for compliance because the subpoenas were issued to Wells Fargo, and Wells Fargo has filed no objection to the subpoenas. Lastly, the SEC argues that the subpoenas do not seek any corporate resolutions as Rosiere contends. They only seek bank records.

3

**DISCUSSION**

As a general matter, the RFPA permits challenges by customers of financial institutions to government subpoenas. See 12 U.S.C. § 3410(a). The RFPA was enacted by Congress in response to the United States Supreme Court's ruling in United States v. Miller, 425 U.S. 435 (1976), where the Court held that bank customers had no Fourth Amendment right to privacy for financial information held by financial institutions. See, e.g., In re Blunden, 896 F.Supp 996, 999 (C.D. Cal. 1995). The RFPA requires federal government agencies to provide banking customers with notice and an opportunity to object before a bank can disclose personal financial information to the federal government agency. See generally 12 U.S.C. §§ 3401-342. The RFPA "narrowly constrains the range of decisions which the Court may make with regard to motions to quash." Blunden, 896 F.Supp at 999 (citing Collins v. Commodity Futures Trading Comm., 737 F.Supp. 1467, 1478 (N.D. Ill. 1990)). There are only three relevant questions for the court to consider: "(1) Is there a legitimate law enforcement inquiry; (2) are the subpoenaed bank records relevant to the inquiry; and (3) has the government agency complied with the requirements of the RFPA?" Id.

    **A.**    **September 28, 2009 Subpoena *Duces Tecum*.**

The RFPA permits customers of financial institutions to challenge a government subpoena for financial records. Under the Act, a customer is defined as "an individual or a partnership of five or fewer individuals." 12 U.S.C. § 3401(4) and (5) (defining "person" and "customer," respectively). The September 28, 2009 subpoena seeks bank account records of Net Central, Platinum, Active Trader, Rosiere Mortgage, Lite, and Seva. Pursuant to 12 U.S.C. § 3401 (4) and (5), these companies are not "customers" because they are not "persons" as defined by the RFPA. All of these entities are incorporated entities and therefore fall outside of the scope of the RFPA's customer challenge provisions. Thus, Rosiere's motion to quash this subpoena is denied.

    **B.**    **October 1, 2009 Subpoena *Duces Tecum.***

The RFPA provides that the court must deny a customer challenge to a subpoena if the government establishes the relevance of the subpoenaed documents to a legitimate law enforcement inquiry. 12 U.S.C. § 3410(c) (emphasis added). For purposes of an administrative subpoena, "the notion of relevancy is a broad one. . . . So long as the material [sought by the subpoena] touches on a

matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." Id.; see also Casey v. FTC, 578 F.2d 793, 799 (9th Cir. 1978) ("subpoena must be enforced if the information sought is not plainly incompetent or irrelevant to any lawful purpose"). The SEC has met its burden of establishing that its investigation is a legitimate law enforcement inquiry and that it has a reasonable belief that the records sought are relevant to a legitimate ongoing investigation. It is authorized by Section 20 of the Securities Act, 15 U.S.C. 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. 78u(a), to undertake investigations to determine whether violations of federal securities law have occurred. The Verified Points and Authorities (Dkt. #5) represent that the records will help the SEC determine the extent of Rosiere's involvement in the trading schemes under investigation. Second, they will show whether additional parties were involved in the scheme. Third, they may help trace the proceeds of possibly illegal transactions for disgorgement and other purposes. The SEC has met its burden to show the records are relevant to a legitimate law enforcement inquiry. See, e.g., Blunden, 896 F.Supp. at 1000 (declaration of government official attesting to commencement of investigation following receipt of criminal report from bank sufficient to establish demonstrable reason to believe law enforcement inquiry is legitimate, and records are relevant). Thus, Rosiere's motion to quash this subpoena is denied.

**II.     Motion to Quash/Strike (Dkt. #12).**

Rosiere's Motion to Quash/Strike (Dkt. #12) seeks to strike the SEC's Response (Dkt. #10) to Rosiere's Motion for Sanctions as well as the related Certificate of Service (Dkt. #11). Rosiere states that service of the Response (Dkt. #10) and Certificate of Service (Dkt. #11) was not proper under Rule 5(b) of the Federal Rules of Civil Procedure. With regard to the service issue, Rosiere is correct that the Response (Dkt. #10) was not initially served in compliance with Rule 5 because it was sent by Federal Express overnight delivery. See Magnuson v. Video Yesteryear, 85 F.3d 1424, 1430-31 (9th Cir. 1996). However, the SEC re-served its Response (Dkt. #10) by regular U.S. mail on February 1, 2010. See Certificate of Service (Dkt. #16).

Rosiere also asserts that the SEC has cited statutes and cases that have no relevance to this case. Rosiere argues that the footnote on p.2 of the SEC's Response does not discuss each of the elements required to challenge a subpoena under the RFPA. However, SEC v. Jerry T. O'Brien, Inc., 467 U.S.

1  735, 746 (1984) was merely cited for the proposition that the court must rule on a motion to quash
2  pursuant to the RFPA within seven days of the government agency's response.  That case simply
3  reiterates the statute's requirement.  See 12 U.S.C. § 3410(b).  The other statute referenced in the
4  footnote merely notes that a financial institution may not disclose records to a government agency
5  unless it complies with the RFPA.  See 12 U.S.C. § 3403(b).  The citations support the propositions for
6  which they are cited.  These citations were provided for the court's benefit to explain its obligations in
7  ruling on Rosiere's various motions after the SEC filed its response.

8  Moreover, as Rosiere is aware, only service by U.S. mail is appropriate service under Rule 5.
9  Rosiere's Motion to Quash/Strike (Dkt. #12) states that "[Rosiere] hereby certifies that on October 23,
10 2009, a true and correct copy of the [motion] was sent by United mail or other third party carrier or
11 fax."  See Certificate of Mailing, Dkt. #12 at 5.  As Rosiere knows, the Ninth Circuit has held that
12 service under Rule 5 may only be made by U.S. mail.  See Magnuson, 85 F.3d at 1430-31.  Rosiere's
13 Certificate of Mailing does not indicate how service of this motion was made.  For all of these reasons,
14 Rosiere's Motion to Quash/Strike (Dkt. #12) is denied.

15 **III.     Motion for Sanctions (Dkt. #9).**

16 Rosiere's Motion for Sanctions (Dkt. #9) seeks sanctions against the SEC for failing to effect
17 service of the SEC's Verified Points and Authorities (Dkt. #5) and Affidavit (Dkt. #6) in compliance
18 with Federal Rule of Civil Procedure 5(b).  Rosiere also asks for sanctions, asserting counsel for the
19 SEC made a materially false misrepresentation in a Certificate of Service (Dkt. #7).  Counsel for the
20 SEC served these documents via Federal Express overnight delivery.  In a prior Order (Dkt. #14), the
21 court directed counsel for the SEC to re-serve the documents in question on Rosiere by U.S. mail
22 because, as Rosiere correctly pointed out, in the Ninth Circuit, service by Federal Express does not
23 satisfy the requirements of Rule 5(b).  Id.  However, the SEC's Certificate of Service (Dkt. #7), which
24 merely states the manner in which the documents were served, does not amount to a materially false
25 statement or require sanctions.  Rosiere's Motion for Sanctions (Dkt. #9) is, therefore, denied.

26 Accordingly, for the foregoing reasons,

27 **IT IS ORDERED** that:

28 1.     Rosiere's Motion for Order (Dkt. #2) is DENIED.

6

1  2.   Rosiere's Motion for Sanctions (Dkt. #9) is DENIED.

2  3.   Rosiere's Motions to Quash/Strike (Dkt. #12) is DENIED.

3  Dated this 5th day of February, 2010.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE